1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE TULALIP TRIBES, and THE
CONSOLIDATED BOROUGH OF QUIL CEDA
VILLAGE,

                 Plaintiffs,

       v.

Washington State Department of Revenue Director
VIKKI SMITH, SNOHOMISH COUNTY,
Snohomish County Treasurer KIRKE SIEVERS,
and Snohomish County Assessor CINDY
PORTMANN,

            Defendants

Case No.: _____

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

The Tulalip Tribes ("Tulalip"), a federally-recognized Indian tribal government, and the

Consolidated Borough of Quil Ceda Village ("Quil Ceda Village" or the "Village"), a political

subdivision of the Tulalip Tribes, by and through counsel, state and allege as follows:

## INTRODUCTION

1.   Over the course of the past two decades, the Tulalip Tribes and its political subdivision, Quil

       Ceda Village, have transformed hundreds of acres of previously vacant Tribally owned trust

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF – Page 1

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

lands within the Tulalip Reservation into a thriving municipality and economic center housing over 150 businesses, attracting thousands of visitors each day, and generating hundreds of millions of dollars in economic activity each year.  This Complaint seeks to vindicate the right of Tulalip and the Village to collect Tribal tax revenues on economic activities occurring within the boundaries of the Village through a declaratory judgment and injunction enjoining Defendants' imposition and enforcement of state and county sales and use, business and occupation, and personal property taxes within the Village to the extent of like taxes imposed by Tulalip or the Village.  Defendants' taxes currently preclude Plaintiffs from imposing Tribal taxes.

2.  The development of the Village was accomplished through the implementation of a unique federal statute authorizing Tulalip to lease its lands under federally-approved Tribal laws for economic development purposes.  Act of June 2, 1970, Pub. L. No. 91-274, § 3, 84 Stat. 302, codified as 25 U.S.C. § 415(b) ("Tulalip Leasing Act").  The development of the Village advances congressional policies promoting the Tulalip Tribes' self-determination, self-sufficiency, and economic development.  In furtherance of these Congressional objectives, Tulalip and the Village, to the exclusion of the State of Washington and its political subdivision Snohomish County, have planned, designed, financed, constructed, and maintained the physical and governmental infrastructure that supports activities within the Village; maintain authority to determine which businesses may locate within the Village and select tenants to maximize the Village's appeal as a premier retail and entertainment destination; and provide the day-to-day government services upon which businesses within the Village, their employees, suppliers, and patrons depend, and which enable those businesses to thrive.

3.  However, the State of Washington and Snohomish County, to the exclusion of Tulalip and the Village, annually collect tens of millions of dollars in sales and use, business and occupation, and personal property tax revenues from these businesses and their patrons.  The collection of

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 2

these taxes unduly burdens Tulalip and commerce within the Village and interferes with Tulalip's achievement of the self-determination, self-sufficiency, and economic development goals that it shares with the United States.  Defendants' taxes preclude Tulalip and the Village from imposing and enforcing their own like Tribal taxes.  Tribal tax revenues would support the infrastructure and government services essential to attract and retain commercial tenants and visitors, finance further infrastructure and economic development activities within the Village, and support essential government services for Tribal members and the Reservation community. The imposition of state and county taxes to the exclusion of Tribal taxes frustrates federal statutory and regulatory provisions that support Tulalip's economic development of its Reservation trust lands without interference by state and local governments.

4.  The Tulalip Tribes and Quil Ceda Village therefore bring this action for declaratory and injunctive relief to restrain Defendants from administering and enforcing their taxes within the Village, which, to the extent of any like taxes imposed by Plaintiffs, unlawfully burden Tulalip and commerce on the Tulalip Reservation, are preempted by federal law, and unlawfully interfere with Plaintiffs' sovereign right of self-government.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1362.  Tulalip maintains government-to-government relations with the United States and has a governing body duly recognized by the United States Secretary of the Interior.  Tulalip and the Village assert claims arising under the Constitution and laws of the United States, including the Indian Commerce Clause, Article I, § 8, cl.3, the Supremacy Clause, Article IV, § 2, and federal common law.  The allegations of the Complaint give rise to an actual controversy within the meaning of 28 U.S.C. § 2201.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 3

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that one or more of the Defendants reside in this District, the actions or omissions giving rise to the claims occurred in this District, and the property that is the subject of the action is situated in this District.

**PLAINTIFFS**

7. Plaintiff Tulalip Tribes is a federally-recognized Indian tribal government organized pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 476, and recognized by the Secretary of the Interior. *See* Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs, 80 Fed. Reg. 1,942, 1,946 (Jan. 14, 2015). Tulalip exercises sovereign powers of self-governance and jurisdiction over the Tulalip Reservation, which is located within the exterior boundaries of the State of Washington. Tulalip brings this action on its own behalf and on behalf of its members.

8. Plaintiff the Consolidated Borough of Quil Ceda Village is a municipal corporation chartered under the laws of the Tulalip Tribes, the boundaries of which encompass approximately 2,163 acres within the Tulalip Reservation held in trust by the United States for the benefit of Tulalip. The Village is recognized as a political subdivision of an Indian tribal government by the United States pursuant to federal statute. The Village has been delegated and exercises broad governmental powers within Village boundaries, including taxing and police powers.

**DEFENDANTS**

9. Defendant Vikki Smith is the Director of the Washington State Department of Revenue, charged with the administration and enforcement of taxes at issue in this Complaint, and is sued in her official capacity.

10. Defendant Snohomish County is a municipal government organized under Washington law that administers and enforces taxes at issue in this Complaint.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 4

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

11. Defendant Kirke Sievers is the Snohomish County Treasurer, charged with the administration and enforcement of taxes at issue in this Complaint, and is sued in his official capacity.

12. Defendant Cindy Portmann is the Snohomish County Assessor, charged with the administration and enforcement of taxes at issue in this Complaint, and is sued in her official capacity.

## THE TULALIP TRIBES' CREATION OF QUIL CEDA VILLAGE

13. The Tulalip Tribes is the successor in interest to tribes and bands signatory to the 1855 Treaty of Point Elliott, including the Snohomish, Snoqualmie, and Skykomish.  The Tulalip Reservation was established by the Treaty of Point Elliott and was subsequently enlarged by the Executive Order of President Grant on December 23, 1873.  Tulalip possesses inherent sovereign authority and rights of self-government over the Reservation, including the powers to tax and undertake economic activities on the Reservation.

14. Pursuant to the Constitution and Bylaws for the Tulalip Tribes, approved by the Secretary of the Interior in 1936, Tulalip is governed by the duly elected seven-member Tulalip Board of Directors.  The Board has broad constitutional powers, including, *inter alia*, the power to tax tribal members and non-members doing business on the Reservation, the power to enact ordinances and resolutions, the power to charter subordinate organizations for economic purposes, and the power to safeguard and promote the peace, safety, morals, and general welfare of the Reservation.

15. In the early 1990s, the Board of Directors directed the Tulalip Economic Development Department to devise a plan for the development of more than 2,000 acres of vacant Reservation lands held in trust for Tulalip by the United States immediately adjacent to Interstate 5 near Marysville, Washington.  The Board of Directors recognized the commercial value and economic development potential of these lands.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 5

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

16. The Board of Directors further directed that Tulalip, not non-Indian developers, retain control over the planning, design, and development of the project, and that the project advance Tulalip's economic diversification, attract visitors to the Reservation, provide a tax base to generate revenues for essential government services, and create on-Reservation employment and business opportunities for Tribal members.

17. Tulalip determined to fulfill these objectives by creating an integrated commercial development offering a broad range of retail and entertainment activities that would transform the area into a regional commercial destination attractive to business lessees, patrons, and other visitors.  The Board of Directors recognized that the Tulalip Leasing Act provided a vehicle for implementing this plan, which would require the development of a comprehensive infrastructure and service plan for the designated trust lands.

18. In 2000, the Board of Directors adopted Tulalip Tribes Code Title 1 Chapter 1.25 ("TTT 1.25"), which authorized the creation of political subdivisions of Tulalip.  TTT 1.25 was submitted to and approved by the Secretary of Interior.  Soon thereafter the Board of Directors chartered the Consolidated Borough of Quil Ceda Village as a municipal corporation under TTT 1.25.

19. The surveyed boundaries of the Village, as set out in the Charter of the Consolidated Borough of Quil Ceda Village, encompass the Tribal trust lands that had been targeted for economic development by the Board of Directors.  An express purpose of incorporating these lands into the Village was to diversify and strengthen Tulalip's economic base by advancing this development.

20. Pursuant to its Charter, the Village is governed by a three-member Village Council elected by the Board of Directors and is authorized, *inter alia*, to exercise tax, police, and eminent domain powers and to protect the public safety, health, and welfare within Village boundaries.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 6

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

21. The Village may impose property, sales, business, and other taxes to provide for the purposes for which the Village is incorporated and for any public or municipal purpose within the Tulalip Indian Reservation.  As set forth under the Village Charter, the cumulative tax burden imposed within the Village may not exceed the tax burden imposed upon property, transactions, persons and entities within municipalities in Snohomish County, Washington.

## **PLAINTIFFS' DEVELOPMENT OF INFRASTRUCTURE AT QUIL CEDA VILLAGE**

22. When the Board of Directors first targeted the lands comprising Quil Ceda Village for development, those lands were vacant and lacked any infrastructure to support municipal functions or economic development.  Access to the lands was largely blocked by a hole approximately 200 feet in diameter and 50 feet deep that had been created during the construction of Interstate 5.  Tulalip filled the hole and regraded the land.

23. Since that time, at a cost of tens of millions of dollars to Plaintiffs and the United States, Plaintiffs have undertaken comprehensive infrastructure development within the Village necessary to support municipal functions and economic development.  Plaintiffs have been responsible for, *inter alia*, the planning, engineering, design, construction, installation, and maintenance of: roads and sidewalks, including entrance to the Village from Interstate 5; parking areas and medians; sewer and stormwater lines; a four-million gallon capacity flat membrane sewage treatment facility; two two-million gallon water reservoirs; natural gas lines; ductile iron water lines, pumping stations sufficient for consumptive water use and fire suppression, and fire hydrants; 200 separate satellite-controlled irrigation zones; an electrical substation and electrical utility lines; telecommunications lines; and signage and appropriate traffic control devices, including traffic and street lighting.  These expenditures were designed to attract and retain lessees, their patrons and suppliers, and other visitors to the Village.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 7

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

24. Tulalip managed and completed the above infrastructure projects with Tribal staff and Native American employees and businesses, using tens of millions of Tribal hard dollars and federal funds.  No non-Indian developer participated in these projects.

25. The planning, engineering, design, construction, and installation of this infrastructure and its ongoing management and maintenance have provided significant employment and business opportunities for Tribal members, including as contractors, government officials, and employees.  These projects are subject to federal and Tribal Indian preference in employment laws and regulations.

26. Tulalip and the Village have secured federal funding to help finance substantial portions of these infrastructure development activities, such as the Village's freshwater, wastewater, and stormwater systems; phone, fiber, cable, natural gas, and electrical lines; and street lighting throughout the Village.  Tulalip and the Village have received other forms of federal assistance as well, including participation in planning, designing, engineering, environmental review, and construction of a new road system in the Village.

27. The State of Washington has performed or financed few if any infrastructure development activities within Quil Ceda Village.

28. Snohomish County has performed or financed few if any infrastructure development activities within Quil Ceda Village.

29. Other local governments have performed or financed few if any infrastructure development activities within Quil Ceda Village.

30. Tulalip and the Village have also invested tens of millions of Tribal dollars, and the United States has invested millions of federal dollars, for the improvement of 88th and 116th Streets and of the Interstate 5 interchanges at 88th and 116th Streets, which provide access to the southern and northern ends of the Village.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 8

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

**PLAINTIFFS' ECONOMIC DEVELOPMENT ACTIVITIES AT QUIL CEDA VILLAGE**

31. Tribal and Village funds dedicated to planning and development have remained under direct Tribal control.  Tulalip has not contracted with any outside developer in connection with economic development activities within Quil Ceda Village.

32. Pursuant to its authority under the Tulalip Leasing Act and the Tulalip Leasing Code, Tulalip first sought to attract "anchor" tenants that would encourage additional investment and development at the Village.  In 1999, Tulalip entered into a ground lease for up to 75 years with Wal-Mart Corporation for lands within the boundaries of Quil Ceda Village.  Wal-Mart agreed to locate at the Village site only after learning of Tulalip's unique leasing authority, the long-term economic and infrastructure development plans for the Village, and the economic growth potential for that site.  Tulalip worked closely with Wal-Mart to ensure that the initial infrastructure development, including roads, traffic flow, and utility services, would meet the needs of future tenants.  In 2000, Tulalip secured a second anchor tenant when it leased lands within the Village to Home Depot Corporation for up to 50 years.

33. In 2001, Tulalip constructed the Tulalip Retail Center containing 16 storefronts. Tulalip owns and operates the retail center, which leases to commercial tenants, which currently include a Tribally owned pharmacy, United Postal Service store, salon, restaurants, and the Marysville-Tulalip Chamber of Commerce, which Tulalip financially supports.  Tulalip has also entered land leases with approximately 15 other commercial tenants at free-standing locations within the Village, including retail merchants, service providers, and restaurants.

34. In 2003, seeking to further expand Tulalip's economic base, to create a magnet for new businesses, and to attract new patrons to Village businesses, Tulalip opened a Tribally constructed, owned, and operated gaming facility strategically located in the center of the

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

Village north of Home Depot and Wal-Mart.  Tulalip also owns and operates a Bingo Hall within the Village.

35. In 2004, Tulalip entered a master lease with Chelsea Property Group (now a subsidiary of Simon Property Group) for lands within the Village just north of the casino for Seattle Premium Outlets, which today has approximately 140 sublessees.  Tulalip invested millions of dollars in "build to suit" infrastructure for these lands for Chelsea Property Group.  In 2011 and 2012, Tulalip expanded the Seattle Premium Outlets lease by approximately 100,000 square feet of additional retail space and 877 additional parking stalls in a two-story parking structure.

36. In 2005, Tulalip opened a Tribally constructed, owned, and operated amphitheater within the Village that hosts nationally-known entertainment acts during the summer months, as well as local charitable and recreational events.  Tulalip and the Village provide all crowd, security, and traffic control for amphitheater events within the Village.

37. In 2008, Tulalip opened a Tribally constructed, owned, and operated hotel, resort, and spa adjacent to the casino.  The hotel, resort, and spa expand and diversify Tulalip's economic base, attracting additional visitors to the Village for longer periods of time.

38. In 2011, Tulalip entered a 75-year, build-to-suit lease with Cabela's outdoor outfitter for a 110,000 square foot retail store, which opened in 2012.  Tulalip owns the building in which Cabela's conducts its operations.

39. Tulalip also regularly leases open lands within the Village for one-time events and sales, such as "Black Friday" and the sale of a variety of seasonal items.  For these events and sales, Tulalip and the Village provide most or all crowd, security, and traffic control within the Village.

40. Tulalip operates several other businesses within the Village, including Tulalip Data Services and Tulalip Broadband, a pharmacy, the 116th Chevron gas and convenience store, and Tulalip Liquor Store & Smoke Shop.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 10

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

41. The Quil Ceda Village Administration Center is located within the Village.  It houses all Village government staff and administrative activities and also operates an employment, job training, and hiring hall that places Tribal members and other Native Americans at jobs within the Village.

42. Large portions of the Village, including the areas surrounding Quil Ceda Creek, are dedicated and maintained by Plaintiffs as parkland, picnic areas, walking and biking trails, an interpretive science path, and wetland preserves.  Tulalip has received U.S. Environmental Protection Agency approval to administer various federal environmental programs within the Village.

43. Tulalip comprehensively regulates the leasing of Quil Ceda Village lands pursuant to the federally-approved Tulalip Leasing Code.  Tulalip and the Village do not permit any business that seeks to locate within the Village to do so.  Tulalip and the Village are selective in which businesses they allow to participate in the Village economy so as to maintain an appropriate mix of businesses and services and to maximize the appeal of the Village as a premier retail and entertainment destination.  Decisions regarding applications to locate and operate businesses within the Village are reviewed by the Board of Directors and Village Council to ensure the long-term goals of Tulalip and the Village are fulfilled.  To that end, Plaintiffs also exercise design control over all buildings within the Village.

**GOVERNMENT SERVICES PROVIDED BY PLAINTIFFS AND THE UNITED STATES AT QUIL CEDA VILLAGE**

44. Tulalip comprehensively regulates all aspects of the leasing of Tribal trust lands within the Village, and the use of those lands by Village businesses, pursuant to the Tulalip Leasing Code and lease provisions. The Tulalip Leasing Code, for example, includes provisions regarding land use planning and zoning, building codes, environmental impacts, taxation, lease enforcement, insurance, assignment and encumbrances, and improvements to leased lands.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF – Page 11

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

45. Tulalip and the Village are responsible for the ongoing regulation, permitting, planning, and inspection of economic activities within the Village, which enable Plaintiffs to govern and manage the Village and to attract and retain visitors and lessees.  Tulalip maintains its own community development agency and building inspector.

46. Tulalip and the Village provide (or pay for on a fee-for-service contract basis) virtually all day-to-day government services within the Village to Village businesses and their employees, suppliers, and patrons.  These services include, *inter alia*, police protection by nine full-time officers dedicated to the Village; traffic control and ongoing traffic flow improvements; fire protection; emergency medical and 911 services; water supply and transmission services; sewer, stormwater, and wastewater services; garbage and debris collection and disposal; road and sidewalk maintenance and snow removal; parking design and construction; environmental protection; landscaping and maintenance of all common areas; pest control; phone, internet, and cable television; utility maintenance and planning; and a civil court system for the resolution of disputes arising within the Village.

47. Tulalip Tribal police officers assigned to the Village are recognized and authorized to act as general authority Washington peace officers under State law, and thus have the same powers as any other general authority Washington peace officer to enforce the criminal and traffic laws of the State of Washington, including the power to arrest non-Indians for violations of state laws. Tulalip Tribal police officers are also cross-deputized as County officers by the Snohomish County Sheriff.

48. These government services are carried out in significant part by Tribal members and other Native Americans who are employed as government officials, employees, and contractors.  The Tulalip Employment Rights Office, assisted and funded by the U.S. Department of Labor, requires employment preference to be given to Native American persons and businesses.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 12

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

49. The United States also provides regulatory and government services that protect the health and welfare of businesses and visitors within the Village.  For example, Indian Health Services ("IHS") provides food, health and safety inspections and certifications throughout the Village, including at restaurants, construction sites, community events, and the sewage treatment facility. IHS also trains the Tribal food inspectors who inspect and certify restaurants and food services within the Village.  The U.S. Environmental Protection Agency helps safeguard environmental quality by regulating motor vehicle fuel stations in the Village; monitoring, treating, and mitigating for hazardous materials; and overseeing other activities affecting the environment. The U.S. Army Corps of Engineers also provides government services, including wetlands permitting activities within the Village.

50. All retail businesses in the Village must obtain and display federal Indian Traders Licenses from the Bureau of Indian Affairs, pursuant to comprehensive federal regulations.  To obtain an Indian Traders License, each business must submit to a federal background check, including personal and corporate financial status, capital to finance the business, prior business experience, and criminal and licensing history.

51. The Village Council and the Board of Directors have also adopted Tribal ordinances and codes that regulate businesses and activities within the Village (for example, through permitting and inspections), including, *inter alia*, the Health and Safety Ordinance, Animal Control Ordinance, Noise Control Ordinance, Civil Infractions Ordinance, Rights of Way and Easements Ordinance, Right to Work Ordinance, Transient Accommodation Code and Licensing Ordinance, Environmental Infractions Ordinance, Air Pollution Control Ordinance, Business License Ordinance, Tribal and Indian Preference in Hiring and Contracting Ordinances, Zoning Ordinance, Food Service Sanitation Ordinance, Liquor Sales and Distribution Ordinance, Road Construction Code, Uniform Building Code, Uniform Electrical Code, International Fire Code,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 13

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

Criminal Code, Traffic Code, Tort Liability Code, Solicitation and Distribution of Literature Ordinance, Public Assemblage Law, Commercial Use of Sidewalks, Parking Lots, Streets, or Public Lands Ordinance, and Sewer and Water Sanitation Code.

52. The State of Washington provides and funds few if any day-to-day government services within Quil Ceda Village.

53. Snohomish County and other local governments provide and fund few if any day-to-day government services within Quil Ceda Village.

## PLAINTIFFS' ACTIVE ROLE IN GENERATING ACTIVITIES OF VALUE AT QUIL CEDA VILLAGE

54. Through their own planning, design, and development activities, their investment in infrastructure, their provision of government services and amenities, and their selection and management of commercial tenants, Tulalip and the Village have implemented the Tulalip Leasing Act and other federal statutes and regulations and have converted a vacant stretch of land on the Tulalip Reservation into a thriving regional retail and entertainment destination.

55. Tulalip and the Village have attracted well over 150 businesses (plus their vendors, suppliers, contractors, and builders), millions of dollars of commercial investment, and hundreds of thousands of visitors to the Reservation.  In doing so, they have generated hundreds of millions of dollars in annual sales activities and tens of millions of dollars in annual tax revenues.  None of these sales and revenues was generated as a result of a competitive tax advantage offered by Tulalip and the Village vis-à-vis comparable businesses and economic activities off-Reservation.

56. Tulalip and the Village have created thousands of new jobs for Tribal members and non-members, including jobs in, *inter alia*, planning, construction, public utilities, maintenance, Village and Tribal government and administration, retail sales, and management.  These activities have provided Tribal members previously unavailable educational, job, business-

ownership, training, and contractor and vending opportunities on the Reservation.  In total, approximately 6,000 people are employed within the Village.

57. Through development of Quil Ceda Village, Tulalip and the Village have spurred economic development outside the boundaries of the Village and Reservation, including along the east side of Interstate 5 and in the greater Marysville area.

58. Tulalip and the Village have not sought, and do not seek, to attract patrons or businesses to the Village by offering a competitive advantage with respect to the taxes challenged in this action. Therefore, Tulalip and the Village have not offered, do not currently offer, and will not offer any tax advantage to businesses, suppliers, or patrons at Quil Ceda Village in relation to other municipalities in Snohomish County with respect to the taxes challenged in this action.

59. Quil Ceda Village includes tribal artwork, tribal signage, and tribal businesses that contribute to its unique character and atmosphere as an upscale tribal retail and entertainment destination.

60. Tulalip and the Village have generated value by engaging in ongoing and long-term municipal planning and management, designing and constructing infrastructure, attracting and selecting tenants and defining the terms of their tenancy, providing government services and regulation, and operating highly successful Tribal businesses that attract visitors and other businesses to the Village.  Tulalip and the Village have played and continue to play an active role in generating activities of value within Quil Ceda Village.

## FEDERAL INTERESTS IN THE TULALIP TRIBES' SELF-DETERMINATION, SELF-SUFFICIENCY, AND ECONOMIC DEVELOPMENT AT QUIL CEDA VILLAGE

61. The Tulalip Reservation was created to support an Indian population through economic activity. The United States has maintained a constant interest in the use of the lands comprising Quil Ceda Village for this purpose.  The lands within the Village have never been converted into fee lands; they have remained held in trust by the United States; they have never been subject to

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 15

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

state or county jurisdiction; and they have been used for the economic benefit of Tulalip and its members.

62. For the past 40 years, the United States' Indian policy has been to encourage and promote tribal self-determination, self-sufficiency, and economic development.  To advance this policy, Congress has vested the Tulalip Tribes with responsibility for and control over the economic development of Tulalip Reservation lands and who may do business there.  In passing the Tulalip Leasing Act, Congress authorized Tulalip to lease Tribal trust lands for business, recreational, and other purposes in accordance with the terms of Tribal law approved by the Secretary of the Interior.  Tulalip has adopted and gained federal approval of its own leasing statute, Tulalip Tribes Code Title 6 Chapter 6.15 ("TTT 6.15").  When the Tulalip Leasing Act was first enacted in 1970, federal law required that all other federally-recognized Indian tribes obtain Secretarial approval for surface land leases.  And while the original Act limited Tulalip leases to 30-year periods without Secretarial approval, Congress amended the Act in 1986 to extend that period to 75 years.

63. The Indian Tribal Governmental Tax Status Act of 1982 also furthers the federal policy supporting Native American economic self-sufficiency.  The Act recognizes the authority of Indian tribes to incorporate political subdivisions, and further recognizes the governmental authority of those subdivisions to generate revenue through taxation.  By a letter ruling dated November 14, 2001, the United States Internal Revenue Service recognized and listed the Village as a political subdivision of the Tulalip Tribes.  As a federally recognized Indian municipality, the Village is entitled to be treated as a state for certain purposes under the Indian Tribal Governmental Tax Status Act, and under the Act has authority to support infrastructure financing through the issuance of tax favored securities or municipal bonds.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 16

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

64. Congress has provided by statute that lands held in trust by the United States for the benefit of an Indian tribe or its members are not subject to state and local taxation.

65. Congress and the U.S. Department of the Interior, Bureau of Indian Affairs, comprehensively regulate all aspects of the leasing and use of tribal trust lands, including state and local taxation of economic activities and property on Indian trust lands.  For example, 25 C.F.R. § 162.017 provides that  (a) "permanent improvements on the leased land, without regard to ownership of those improvements, are not subject to any fee, tax, assessment, levy, or other charge imposed by any State or political subdivision of a State;" (b) "activities under a lease conducted on the leased premises are not subject to any fee, tax, assessment, levy, or other charge (e.g., business use, privilege, public utility, excise, gross revenue taxes) imposed by any State or political subdivision of a State"; and (c) "the leasehold or possessory interest is not subject to any fee, tax, assessment, levy, or other charge imposed by any State or political subdivision of a State."

66. The Secretary of the Interior has found that state and local taxes preclude tribes from exercising their own tax authority to generate revenues to support infrastructure and government services, increase project costs and discourage investment on Indian lands, impede tribes' ability to secure financing and private capital to support development, and threaten the status of tribes and their citizens as the primary beneficiary of the leasing of trust lands and economic activities on those lands.   The Secretary has further found that such state and local taxes obstruct federal policies supporting tribal economic development, self-determination, and strong tribal governments, and that federal statutes and regulations occupy and preempt the field of Indian leasing.

67. In 2013, the Board of Directors adopted the substantive language of 25 C.F.R. § 162.017 into the Tulalip Leasing Code, TTT 6.15.300.  The BIA Northwest Regional Director and Acting Superintendent approved this Tribal law provision.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 17

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

68. Congress has further implemented the self-determination policy through general legislation, beginning with the Indian Self-Determination and Education Assistance Act, which provides that "the United States is committed to supporting and assisting Indian tribes in the development of strong and stable tribal governments, capable of administering quality programs and developing the economies of their respective communities," 25 U.S.C. § 450a(b), and which seeks to maximize effective and meaningful Indian participation in the direction, planning, conduct, and administration of federal services to Indian communities.  25 U.S.C. § 450a(a)-(b). Other statutes implementing this policy include, *inter alia*, the Indian Tribal Regulatory Reform and Business Development Act of 2000, the Indian Gaming Regulatory Act, the Native American Business Development, Trade Promotion and Tourism Act of 2000, and the Indian Tribal Justice Technical and Legal Assistance Act of 2000.  Likewise, every President since President Lyndon B. Johnson has embraced this policy, which is also manifested in other sources of federal law and policy.

69. Plaintiffs' imposition and collection of Tribal sales and use, business and occupation, and other tax revenues within the Village would further the achievement of self-determination, self-sufficiency, and economic development under the Tulalip Leasing Act and other federal statutes and regulations enacted in furtherance of these policies.

## DEFENDANTS' TAXATION OF ACTIVITIES AT QUIL CEDA VILLAGE

70. Pursuant to RCW Chapters 82.08, 82.12, and 82.14, Defendants administer and enforce state and county sales and use taxes on retail sales and services provided within Quil Ceda Village, with various exceptions.  The state sales tax rate is 6.5%, and the county sales tax rate is 2.1% in certain unincorporated areas, including the Village.

71. Pursuant to these provisions, in 2013 Defendant Smith or her predecessor collected an estimated $37 million in sales and use taxes on activities within the Village.  These revenues were

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 18

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

deposited in the State general fund for general statewide expenditures, with the exception of approximately $9 million in county sales and use taxes remitted to Snohomish County.

72. Pursuant to RCW Chapter 82.04, Defendant Smith administers and enforces a state business and occupation tax on businesses operating within Quil Ceda Village, with various exceptions. The tax rate is 1.5% for service activities, .471% for retail activities, and .484% for wholesale and manufacturing activities.

73. Pursuant to these provisions, in 2013 Defendant Smith or her predecessor collected an estimated $2.1 million in business and occupation taxes on activities within the Village. These revenues were deposited in the State general fund for general statewide expenditures.

74. Pursuant to RCW Title 84, Defendants administer and enforce state and county property taxes with respect to certain property within the boundaries of the Village, with various exceptions. The state property tax levy for 2013 was approximately $2.43 per $1,000 assessed value, and the county property tax levy for 2013 was approximately $11.30 per $1,000 assessed value.

75. Pursuant to these provisions, in 2013 Defendants collected approximately $1 million in state and county property taxes on property within the Village. The State's share of these revenues, approximately $177,000, was deposited in the State general fund for general statewide expenditures, and the county's share of these revenues, approximately $823,000, was retained by Snohomish County.

76. In March 2014, the Department of Revenue issued Property Tax Advisory 1.1.2014, which admits that state and local governments cannot assess property tax on permanent improvements on land owned by the United States and held in trust for Indians. Such lands include Quil Ceda Village. The Property Tax Advisory does not address state or local taxation of personal property on Indian trust lands. Upon information and belief, Defendants continue to assess property tax on certain personal property within the Village.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF – Page 19

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

77. In 2013, revenues from the aforementioned state and county taxes at Quil Ceda Village totaled an estimated $40.1 million.  This sum far exceeds the total annual lease payments and fees received by Plaintiffs from lessees in the Village.

78. Defendants' administration and enforcement of these taxes is ongoing.

79. The State of Washington uses few if any of the tax revenues derived from activities within the Village to provide day-to-day government services within the Village to businesses, their employees, suppliers, or patrons.

80. Snohomish County uses few if any of the tax revenues derived from activities within the Village to provide day-to-day government services within the Village to businesses, their employees, suppliers, or patrons.

81. Defendants remit none of those tax revenues to Tulalip or the Village, despite Tulalip's requests that they do so.

82. Tulalip and the Village have a strong government to government relationship with the State of Washington, Snohomish County, and other local governments and cooperate with them in many areas.  Tulalip has entered into cooperative governmental agreements with the State and County, including with respect to state taxation of cigarette and motor vehicle fuel.  To date, the State and County have been unwilling to enter into any agreement with respect to the sales and use, business and occupation, and personal property taxes collected at Quil Ceda Village.

### DEFENDANTS' ACTIONS UNDULY BURDEN AND IRREPARABLY INJURE PLAINTIFFS AND PREVENT PLAINTIFFS FROM IMPOSING TRIBAL TAXES ON ECONOMIC ACTIVITIES WITHIN THE VILLAGE

83. Plaintiffs have been and remain responsible for the planning, design, development, and overall management of the economic activities within the Village; the planning, design, construction, and installation of infrastructure within the Village; and the provision of essential government services and regulation within the Village to businesses, their employees, suppliers, and patrons.

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

All of these activities successfully implement the Tulalip Leasing Act and other federal laws and policies at the Village and have been undertaken at substantial and continuing expense to Plaintiffs.  Plaintiffs' comprehensive governmental activities have left the State of Washington and Snohomish County with few if any duties or responsibilities within the Village.

84. Village businesses and their employees, suppliers, and patrons impose great and increasing demands on infrastructure and government services provided by Plaintiffs.  The present and future success and competitiveness of the Village depends on Plaintiffs continuing to meet the needs of these businesses and persons.

85. In order to raise revenues to support infrastructure and government services, and to support further economic development within the Village, the Village has enacted a comprehensive Municipal Tax Code, as amended.  The Code imposes, among other taxes, a sales and use tax, a business and occupation tax, and a restaurant privilege tax on economic activities occurring within the Village.  Plaintiffs do not currently implement or enforce these taxes with respect to any non-Tribal businesses in the Village.

86. Defendants' imposition and collection of sales and use, business and occupation, and personal property taxes at Quil Ceda Village effectively prevents Plaintiffs from implementing and enforcing the Municipal Tax Code with respect to any non-Tribal business in the Village and displaces and nullifies as a practical matter Tulalip's sovereign taxation authority with respect to those activities.  This is because Tribal taxes, when added to Defendants' taxes, would subject Village businesses and their patrons to as much as twice the tax burden that they would bear off the Reservation and would force Village businesses to operate at a competitive disadvantage in relation to off-Reservation businesses.

87. This double taxation would significantly reduce or extinguish sales and commerce within the Village, would significantly reduce or extinguish the Village's success as a commercial center,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 21

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

and would strongly deter new and existing businesses from locating and remaining there.  For this reason, Village lessees have negotiated provisions in their leases with Tulalip that prohibit double taxation.  For the same reason, the Village Charter limits the cumulative tax burden borne by businesses within the Village to that borne within other municipalities in Snohomish County.

88. Defendants' actions burden and interfere with Plaintiffs' achievement of the federal goals of self-determination, self-sufficiency, and economic development because they cannot generate tax revenues to support the infrastructure and government services provided within the Village, to support further economic development, and to support the Reservation community. Defendants' actions also burden and interfere with Plaintiffs' ability to pay for improvements to support development of the 1,100 acres of undeveloped Village lands.

89. As a result of Defendants' actions, the Village is dependent on Tulalip to subsidize with Tribal funds the government services and infrastructure provided by the Village and the future infrastructure, government services, and economic development that is necessary to maintain the success and competitiveness of the Village.

90. As a result of Defendants' actions and this subsidization, Tulalip cannot devote these Tribal funds to essential government services for Tribal members and the Reservation community, which services include, *inter alia*, police protection; schools and education funding; health care; job training and counseling; senior citizens housing; elder care; emergency housing for parents and children; child care, youth, and family services; alcohol counseling and rehabilitation; veterans programs; water quality and environmental programs; natural resources management; and cultural resources protection.

91. By denying Plaintiffs a tax revenue stream, Defendants' actions also limit meaningful access by Plaintiffs to the municipal bond market, which bonds Plaintiffs could use to finance additional economic and infrastructure development projects and government services.

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

92. Defendants' imposition and collection of sales and use, business and occupation, and personal property taxes at the Village targets reservation value, unduly burdens Plaintiffs, and interferes with the comprehensive infrastructure, service, regulatory and tax scheme by which Plaintiffs have implemented federal laws and policies.  Plaintiffs will continue to suffer these and other irreparable injuries unless and until Defendants' actions are enjoined

93. Defendants' imposition and collection of sales and use, business and occupation, and personal property taxes at the Village is barred by federal law.

## COUNT I

94. The Indian Commerce Clause of the United States Constitution prohibits state and local action that imposes undue burdens on sovereign Indian tribes and Indian reservation commerce.

95. By failing to provide a credit against state and county taxes to the extent of any like taxes imposed by Plaintiffs in connection with activities at Quil Ceda Village, Defendants impose undue burdens on Tulalip, the Village, and commerce within the Tulalip Reservation.

96. Economic activities within the Village would be significantly reduced or eliminated if both Defendants' and Plaintiffs' taxes were enforced.  Double taxation would place Tulalip, and Village businesses and patrons, at a severe competitive disadvantage with respect to commerce that has occurred and will continue to occur within Quil Ceda Village without any tax advantage, but as a result of Plaintiffs' own efforts in developing, managing, supporting, and regulating economic activities within the Village.

97. Defendants' administration and enforcement of state and county sales and use, business and occupation, and personal property taxes in connection with activities at Quil Ceda Village impermissibly taxes reservation value and precludes Tulalip from exercising its own sovereign authority to tax.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 23

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

98.  Defendants' administration and enforcement of state and county sales and use, business and occupation, and personal property taxes in connection with activities at Quil Ceda Village is not tailored to government services provided within the Village to businesses, their employees, suppliers, and patrons.

99. Defendants' administration and enforcement of state and county sales and use, business and occupation, and personal property taxes in connection with activities at Quil Ceda Village violates the Indian Commerce Clause to the extent of any like taxes imposed by Plaintiffs.

## **COUNT II**

100.  Federal law preempts state and local taxes imposed on non-Indians and their activities within Indian country where those taxes interfere or are incompatible with tribal and federal interests, and where the state or local interests in taxing those activities are insufficient to justify the taxes.

101.  Plaintiffs have a strong interest in generating revenues from activities at the Village through the imposition of their own Tribal taxes.  This interest arises from their implementation of the Tulalip Leasing Act and other federal laws and policies through, *inter alia*, the planning, design, and development of Quil Ceda Village; their infrastructure investments; their selection and management of lessees; their pervasive regulation of the leases and activities conducted thereunder; their provision of day-to-day government services to businesses, their employees, suppliers, and patrons within the Village; the employment of Tribal members in connection with the development and ongoing operation of the Village and businesses in the Village; and their own interest in self-determination, self-sufficiency, and economic development.  Plaintiffs, in conjunction with the United States, have assumed comprehensive control over all governmental activities in the Village, which leaves no room for the imposition of additional burdens by Defendants.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 24

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

102.     Plaintiffs have played and continue to play an active role in generating activities of value at Quil Ceda Village.  The State of Washington and Snohomish County have played no such role.  The sales and use, business and occupation, and personal property taxes administered and enforced by Defendants are directed at reservation value.  None of the economic activities occurring within Quil Ceda Village has been the result of a competitive tax advantage.

103.     The United States also has a strong interest in the self-determination, self-sufficiency, and economic development of the Tulalip Tribes and Quil Ceda Village through the implementation of the Tulalip Leasing Act, the Tax Status Act, as well as other federal statutes, executive orders, and other sources of federal law and policy which support Indian self-determination.  Plaintiffs' infrastructure and economic development activities and provision of government services at the Village have furthered and continue to further this interest.  The United States has made a substantial financial investment in these activities and has a strong interest in Tulalip and the Village receiving the tax revenue benefits arising from them.

104.     Implementation of these federal laws and policies and maintenance of Tribal activities and services would be advanced by Plaintiffs' taxation of economic activities within the Village.

105.     Lands held in trust by the United States for the benefit of an Indian tribe or its members are not subject to state or local taxation.  The leasing of Tulalip trust lands and activities on those lands are subject to comprehensive oversight and regulation by the United States and the Tulalip Tribes, and there is no room for state or local regulation or taxation.  The Secretary of the Interior has further provided by regulation that state and local taxation of business activities, improvements, and leasehold interests on leased Indian trust lands interferes and is incompatible with Tribal and federal interests, is preempted by federal law, and is invalid.

106.     The State of Washington and Snohomish County—which have made few if any contributions to the infrastructure or economic development of the Village; which provide few if

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 25

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

any day-to-day government services within the Village to Village businesses, their employees, suppliers, and patrons; and which use few if any of the tax revenues generated at the Village to support services or activities there—have a weak interest in taxing activities at Quil Ceda Village, limited to their general desire to raise revenue.

107.     The Tribal and federal interests in economic activities within Quil Ceda Village greatly outweigh Defendants' interest in administering and enforcing state and county sales and use, business and occupation, and personal property taxes in connection with those activities.

108.     Defendants' actions interfere and are incompatible with these Tribal and federal interests and frustrate the purposes of the Tulalip Leasing Act and other federal laws.  These purposes include the specific federal policy of promoting Tulalip Tribal self-determination, self-sufficiency, and economic development and the general federal policy of supporting Native American self-determination, self-sufficiency, and economic development.

109.     Federal law preempts Defendants' administration and enforcement of state and county sales and use, business and occupation, and personal property taxes in connection with activities at Quil Ceda Village to the extent of any like taxes imposed by Plaintiffs.

## COUNT III

110.     Tulalip possesses the inherent and federally-recognized sovereign right to make its own laws and to be ruled by them, and state or local action that interferes with or frustrates this right is invalid as a matter of federal law.

111.     Plaintiffs' creation, development, and management of the Village, and the delivery of essential government services to Village businesses, their employees, suppliers, and patrons is an exercise of Tulalip's federally-protected power of self-government.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF  – Page 26

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

112.     The right and ability of Tulalip and its political subdivision Quil Ceda Village to exercise their taxation authority, and to financially support government services, infrastructure projects, and economic development, is a federally-protected right of self-government.

113.     Defendants' taxation of activities at Quil Ceda Village burdens and interferes with Tulalip's ability to exercise its sovereign taxation authority and deprives Tulalip and the Village of the opportunity to raise tax revenues to support infrastructure and essential government services, and to ensure the health, safety, and welfare of its members, and those visiting the Village.

114.     Defendants' administration and enforcement of state and county sales and use, business and occupation, and personal property taxes in connection with activities at Quil Ceda Village interferes with and frustrates Tulalip's sovereign right to make its own laws and to be ruled by them, and violates federal law to the extent of any like taxes imposed by Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

115.     Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of Plaintiffs that Defendants' administration and enforcement of state and county sales and use, business and occupation, and personal property taxes in connection with activities and property at Quil Ceda Village burdens commerce within the Tulalip Reservation in violation of the Indian Commerce Clause to the extent of any like taxes imposed by Plaintiffs.

116.     Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of Plaintiffs that federal law preempts Defendants' administration and enforcement of state and county sales and use, business and occupation, and personal property taxes in connection with activities and property at Quil Ceda Village to the extent of any like taxes imposed by Plaintiffs.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF – Page 27

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100

117.     Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of Plaintiffs that

Defendants' administration and enforcement of state and county sales and use, business and

occupation, and personal property taxes in connection with activities and property at Quil Ceda

Village interferes with Plaintiffs' sovereign right of self-government and violates federal law to

the extent of any like taxes imposed by Plaintiffs.

118.     Permanently and preliminarily enjoin Defendants from imposing, seeking to collect,

collecting, or enforcing the collection of state and county sales and use, business and occupation,

and personal property taxes in connection with activities and property at Quil Ceda Village to

the extent of any like taxes imposed by Plaintiffs.

119.     Award Plaintiffs such other relief as the Court deems just and appropriate.


Dated this 12th day of June, 2015.


Cory J. Albright, WSBA # 31493
Jane G. Steadman, WSBA # 44395
Phillip E. Katzen, WSBA # 7835
Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA  98104
Telephone:    206-344-8100


Lisa M. Koop, WSBA # 37115
Michael E. Taylor, WSBA # 3664
Tulalip Tribes, Office of the Reservation Attorney
6406 Marine Drive
Tulalip, WA  98271
Telephone:    360-716-4550

Counsel for the Tulalip Tribes and the
Consolidated Borough of Quil Ceda Village

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF – Page 28

Kanji & Katzen, PLLC
401 Second Ave. S., Suite 700
Seattle, WA 98104
206-344-8100