1

2

3

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| THE TULALIP TRIBES, and<br>THE CONSOLIDATED BOROUGH<br>OF QUIL CEDA VILLAGE<br><br>   Plaintiffs,<br><br>THE UNITED STATES OF AMERICA,<br><br>   Plaintiff-Intervenor,<br><br>   v.<br><br>THE STATE OF WASHINGTON,<br>Washington State Governor JAY INSLEE,<br>Department of Revenue Director VIKKI<br>SMITH, SNOHOMISH COUNTY,<br>Snohomish County Treasurer KIRKE<br>SIEVERS, and Snohomish County<br>Assessor LINDA HJELLE,<br><br>   Defendants. | CASE NO. 2:15-cv-00940 BJR<br><br>ORDER GRANTING MOTION<br>TO COMPEL |

## I. INTRODUCTION

Plaintiffs, the Tulalip Tribe and its political subdivision the Consolidated Borough of

Quil Ceda Village (collectively, "Plaintiffs" or "Tulalip"), move for an order compelling the

State of Washington, Washington State Governor Jay Inslee, and Washington State Department

of Revenue Director Vikki Smith (collectively, the "State Defendants") to answer interrogatories

and requests for production served by Plaintiffs. Dkt. No. 44. The State Defendants oppose the

motion, arguing that the requested information is protected by Washington State confidentiality

statutes. Dkt. No. 48. Intervenor-Plaintiff, the United States, filed a statement in support of Plaintiffs' motion. Dkt. No. 46. Having reviewed the motion, the opposition thereto, the record of this case, and the relevant legal authorities, this Court will GRANT the motion. The reasoning for the Court's decision is set forth below.

## II.   BACKGROUND

This lawsuit stems from state and local taxes imposed by the State of Washington and Snohomish County on business activities conducted in Quil Ceda Village ("the Village"). The Village is a federally recognized municipality comprised of approximately 2,000 acres of land on the Tulalip Reservation. Tulalip alleges that over two decades and "at the cost of tens of millions of dollars," it transformed what was once vacant land into the Village, a regional and entertainment destination that houses more than 150 business and generates hundreds of millions of dollars in annual sales. Tulalip claims that it created the Village "through its own efforts, to the exclusion of the State of Washington and Snohomish County." Dkt. No. 44 at 3. Nevertheless, "the State and County monopolize 100%" of the retail sales tax, business and occupation tax, and personal property tax generated by the businesses within the Village, "totaling tens of millions of dollars annually." *Id*.  Tulalip alleges that these state and local taxes are unlawful because they are preempted by federal law, violate the Indian Commerce Clause of the United States Constitution, and interfere with the Tulalip Tribe's sovereign right of self-government.

The parties commenced discovery and Tulalip served the State Defendants with interrogatories and requests for production of documents. The State Defendants produced material responsive to some of the discovery requests, but objected to Interrogatory Nos. 1, 2, and 4 (as well as the corresponding document requests). The requested discovery is as follows:

2

Interrogatory No. 1

> For each of the years from 1999 through 2015 identify for each Taxpayer the amount of Sales Tax Remitted, the Taxpayer's Sales, the rate(s) of Sales Tax, the fund(s) or account(s) in which the Sales Tax was deposited or entity or entities to which the Sales Tax or a portion thereof was otherwise distributed, and the amounts so deposited or distributed.

Interrogatory No. 2

> For each of the years from 1999 through 2015, identify for each Taxpayer the amount of B&O Tax Remitted, the Taxpayer's Receipts, the rate(s) and classification(s) of B&O Tax, the fund(s) or account(s) in which the B&O Tax was deposited or entity or entities to which the B&O Tax or a portion thereof was otherwise distributed, and the amounts so deposited or distributed.

Interrogatory No. 4

> For each of the years from 1999 to 2015, identify for each business or entity within the political boundaries of Quil Ceda Village the total number of employees, the total hours worked, and the total wages and other compensation paid.

The State Defendants object to these discovery requests. With respect to Interrogatory Nos. 1 and 2, the State Defendants claim that Wash Rev. Code § 82.32.330 prohibits the disclosure of taxes remitted by the Village businesses and their gross sales and receipts, asserting that confidential state tax information is privileged. With respect to Interrogatory No. 4, the State Defendants argue that Wash. Rev. Code § 51.16.070(2) and § 50.13.020 deem such employment information confidential. Despite these objections, the State Defendants produced materials responsive to portions of these interrogatories, as well as other interrogatories propounded by Tulalip.

In reviewing the materials, Tulalip discovered that the State Defendants inadvertently disclosed privileged information. Tulalip notified the State Defendants pursuant to the parties' Stipulated Order Re Inadvertent Disclosure of Privileged Information. The State Defendants confirmed that they had inadvertently produced the materials and further claimed the inadvertent

3

production of a broad range of allegedly privileged material, including material responsive to Interrogatory Nos. 1, 2, and 4. Tulalip disputed these privilege claims, but agreed to sequester the documents pending resolution of the dispute. Thereafter, the parties attempted to resolve the discovery dispute, but were unsuccessful. Thus, Plaintiffs filed the instant motion to compel the State Defendants' responses to the discovery requests.

## III.   DISCUSSION

### A.   *Legal Standards*

Federal Rule of Civil Procedure 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). Rule 26(b)(1) is construed broadly. *Roberts v. Legacy Meridian Park Hosp., Inc*., 299 F.R.D. 669, 671 (D. Ore. 2014). The Supreme Court interprets Rule 26(b)(1) to "encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Id*. at 672 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Such a broad scope of discovery, however, must be balanced against the burden or expense of the particular discovery sought, considering its likely benefit, "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Id*. (quoting Fed.R.Civ.P. 26(b)(2)(C)(iii)).

When a party fails to provide requested discovery that falls within the scope of Rule 26(b)(1), Rule 37(a)(1) allows the requesting party—after giving notice to other parties and attempting to confer—to "move for an order compelling disclosure or discovery." *Id*. (quoting Fed.R.Civ.P. 37(a)(1)). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its

4

objections." *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997).

### B.      Analysis

As discussed above, the State Defendants object to producing: (1) the amount of retail and business and occupation ("B&O") taxes remitted by each business between the years 1999 and 2015, and (2) employment information from each business during the relevant time period. The State Defendants argue that this information is privileged under Washington State confidentiality statutes. The Court will address each category of information in turn.

#### 1.      The Retail Sales and B&O Tax Information

Interrogatory Nos. 1 and 2 request the amount of retail sales and B&O taxes remitted by each business in the Village between 1999 and 2015 (as well as the gross retail sales and receipts used to determine those amounts). Tulalip contends that this information is "[d]irectly relevant to this action" and is "essential to the development of [its] federal law claims, including expert analysis." Dkt. No. 44 1-2, 4. The State Defendants object to these discovery requests. They concede that the requested information is relevant to Tulalip's claims[1], but argue that Wash. Rev. Code § 82.32.330 prohibits the State from disclosing the requested information. They contend that the statute "imposes strict rules protecting confidential taxpayer information, including criminal sanctions for unauthorized disclosure." Dkt. No. 48 at 9. They claim that the purpose of Wash. Rev. Code § 82.32.330 is to further two important government objections. "First, [the statute] protect[s] the privacy interests of persons who are required by law to disclose personal or proprietary information relating to their finances. Second, they encourage full and accurate disclosure by persons subject to reporting requirements." *Id*. at 9-10 (citation omitted).

---

[1] *See* Dkt. No. 48 at 12 (noting that the "information about state taxes" is relevant and that the State Defendants "too want[] to achieve a detailed financial picture about the operation [of the businesses in the Village]").

According to the State Defendants, "[r]equiring [them] to disclose confidential tax information in discovery, particularly in a case in which the businesses are not parties, would frustrate these objections and breach the wall of confidentiality that the Legislature has carefully erected." *Id.* at 10.

### a.    Federal law governs this dispute

This discovery dispute is governed by the Federal Rules of Civil Procedure and Evidence. *Pearson v. Miller*, 211 F.3d 57, 61 (3d Cir. 2000) ("[D]iscovery disputes in federal courts are governed by federal law."); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n. 10 (9th Cir. 1992) (same). Therefore, the question before this Court is whether the application of federal law prohibits the release of the requested tax information either "because federal law recognizes one or more applicable evidentiary privileges, or because federal law otherwise provides for the protection of the information here in dispute." *Id.* In other words, "the state statutory confidentiality provisions that have been invoked by [the State Defendants] [] do not directly govern the present dispute." *Pearson*, 211 F.3d at 61, *see also*, *Martin v. Lamb*, 122 F.R.D. 143, 146 (W.D.N.Y. 1988) ("Merely asserting that a state statute declares that the records in question are 'confidential' does not make out a sufficient claim that the records are 'privileged' within the meaning of Fed. R. Civ. P. 26(b)(1) and Fed. R. Evid. 501."); *Abreau v. State of New Jersey*, 2015 WL 9480021, *5 (D.N.J. December 29, 2015) (party asserting privilege must "do more than assert non-binding state confidentiality provisions to support their contention of privilege" under federal law).

### b.    Recognition of the state privilege under Federal Rule 501 is not warranted in this case

The State Defendants concede that the requested state tax information is not protected by an enumerated federal evidentiary privilege. Nevertheless, they urge this Court to recognize the

state privilege enumerated in Wash. Rev. Code § 82.32.330. Specifically, they argue that "[a]lthough federal law governs [here], 'a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" Dkt. No. 48 at 7 (quoting *Goldstein v. City of Long Beach*, 603 F. Supp. 2d 1242, 1250 (C.D. Cal. 2009)). Therefore, the State Defendants argue, "[t]hrough Federal Rule of Evidence 501, federal courts routinely recognize a privilege for state confidentiality statutes that preclude the disclosure of confidential financial information and protect critical state interests in maintaining effective voluntary reporting schemes." Dkt. No. 48 at 1.

The State Defendants are correct that federal courts have recognized state privileges based on the principle of comity between state and federal law. However, the Court finds that doing so is not appropriate in this case. The federal approach to recognizing a state privilege is "characterized by two principal features." *Pearson*, 211 F.3d at 66. First, the recognition of a privilege "should be determined on a case-by-case basis." *Id.* at 67 (quoting *Trammel v. United States*, 445 U.S. 40, 47 (1980) (quoting 120 Cong. Rec. 40891 (1974) (statement of Rep. Hungate))). Second, the court must start "with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional." *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)); *see also*, *U.S. v. Nixon*, 418 U.S. 683, 710 (1974) (cautioning that privileges "are not lightly created nor expansively construed"); *Trammel*, 445 U.S. at 51 (the court must consider whether the privilege "promotes sufficiently important interests to outweigh the need for probative evidence").

Under the circumstances of this case, the Court finds that the State's interest in maintaining the confidentiality of the tax records is not sufficiently important to outweigh Tulalip's need for the information. The State Defendants assert that maintaining the confidentiality of the information is important to protect the privacy interest of the taxpayers. They also claim that it is important to encourage full and accurate disclosure by the taxpayers. The Court finds that these interests are diminished in this case because the tax information will not be used for any purpose adverse to the taxpayers. In addition, the information will be produced pursuant to the parties' Protective Order [dkt. No. 41], which offers protection for confidential material. *See, e.g.*, *Seafirst Corp. v. Jenkins*, 644 F. Supp. 1160, 1164 (WAWD 1986) ("A protective order that restricts use of confidential discovery materials and requires such materials to be filed under seal can provide adequate protections for confidentiality."). Nevertheless, the Court will add an additional element of protection and require the State Defendants to redact any identifying information prior to producing the requested material to Tulalip.

The Court also finds that the appropriateness of deference to Wash Rev. Code § 82.32.330 is diminished in this case because Tulalip is a tribal government. Wash Rev. Code § 82.32.330 specifically authorizes disclosure of the tax information to the "tax department of any state or city or town or county," as well as to "the Canadian government or provincial governments of Canada" if said entities provide similar privileges to Washington State. *Id*. at § 82.32.330(h). The State Defendants cannot credibly argue that its confidentiality interest in the tax information is greater vis-à-vis Indian tribal governments than vis-à-vis the government of "any" city, town, county, or province.

1   Lastly, the State Defendants cite to no case in which a federal court has recognized a state

2   privilege for tax information where, as here, it is undisputed that the information is essential to

3   the plaintiff's claims. Instead, the State Defendants rely on cases arising in the context of federal

4   grand jury criminal investigations. *See*, *e.g.*, *In re Grand Jury Subpoena*, 144 F. Supp. 2d 540,

5   542 (W.D. Va. 2001); *In re Grand Jury Subpoena Dated April 18, 2007*, 485 F. Supp. 2d 709,

6   710 (E.D. Va. 2007); *In re Hampers*, 651 F.2d 19, 23 (1st Cir. 1981). What is more, those courts

7   did not bar production of the requested tax records based on a state nondisclosure statute. Rather,

8   each court recognized that the non-compliant party enjoyed a qualified privilege under Federal

9   Rule 501 because of the state nondisclosure statutes but that the privilege could be overcome.

10  For instance, the court in *In re Grand Jury Subpoena* determined that the government's need for

11  the information outweighed the state's interest in the confidentiality of the tax records and

12  ordered that the documents be released. 144 F. Supp. 2d at 542. Likewise, *In re Hampers*, the

13  First Circuit determined that such information may be disclosed under certain circumstances and

14  remanded the matter to the district court for further proceedings.[2]

15  Based on the foregoing, the Court concludes that the State Defendants must respond to

16  Interrogatory Nos. 1 and 2 (as well as the corresponding requests for document production).[3]

### 2.    The Employment Information

17  The State Defendants object to Interrogatory No. 4 on the ground that it requests

18  confidential employment information. They argue that the State is prohibited from disclosing

19  such information unless this Court makes "a specific finding under Wash. Rev. Code.

---

[2] In *In re Grand Jury Subpoena Dated April 18, 2007*, the court did not order production because the government had failed to make any showing as to why the information was relevant to the case at hand.

[3] The State Defendants request that in the event the Court grants Tulalip's motion to compel with respect to Interrogatory Nos. 1 and 2, the Court provide the business owners whose tax information will be disclosed an opportunity to object to the production before requiring the State Defendants to produce the documents. Dkt. No. 48 at 13 n. 7. The Court declines to do so. Given that the State Defendants must redact any identifying information prior to producing the requested materials, there is no basis for an objection by the business owners.

§ 50.13.070 that 'the need for disclosure outweighs any reasons for privacy and confidentiality of the information.'" Dkt. No. 48 at 14. The State Defendants do not challenge the relevancy of this information to Tulalip's claims, nor do they challenge Tulalip's assertion that its need for the information outweighs any privacy or confidentiality interest in the information. *Id*. Rather, the State Defendants simply argue that they cannot produce the information without a court order to do so.

In moving to compel the information, Tulalip makes clear that it is only interested in determining the number of employees employed by each business in the Village during the relevant time period, the total number of hours worked by those employees, and the total amount of wages paid to those employees. Dkt. No. 44 at 9. Tulalip does not seek any names or other identifying information regarding the employees and further clarifies that it has no objection to the State Defendants redacting such information from the responsive materials as necessary. *Id*. at 9, n. 8. Given this clarification, coupled with the Protective Order in this case, the Court concludes that disclosure is warranted.[4]

---

[4] It appears that the State Defendants may also object to Interrogatory No. 5, which requests information regarding services the State alleged provided within the Village. The State proffered no facial objection to Interrogatory No. 5 and concedes that "State services provided within the Village…are all potentially relevant to this action." Dkt. No. 48 at 6. Nevertheless, the State Defendants suggest, without further clarification, that some of the information responsive to Interrogatory No. 5 is "protected by state confidentiality statutes that prohibit or limit their disclosure." *Id*. at 15. Such a bald statement is not sufficient to establish that a privilege exists. Therefore, to the extent that the State Defendants object to Interrogatory No. 5, the Court overrules the objection.

## IV.    CONCLUSION

For the foregoing reasons, this Court HEREBY GRANTS Tulalip's Motion to Compel Discovery (Dkt. No. 44). The State Defendants shall respond to Interrogatory Nos. 1, 2 and 4, as well as the corresponding document production requests, within thirty (30) days of the date of this order.

Dated this 19th day of July, 2016.


Barbara Jacobs Rothstein
U.S. District Court Judge